IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLEN R.,[1]

      Plaintiff,

                                   1:17-cv-00961-PK

                                   OPINION AND

                                   ORDER

v.


NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

---

PAPAK, Magistrate Judge:

      Plaintiff Allen R. ("Plaintiff") filed this action on June 19, 2017, seeking judicial review

of the Commissioner of Social Security's final decision finding him not disabled and therefore,

denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

Security Act (the "Act"). This court has jurisdiction over Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff argues that the Administrative Law Judge ("ALJ"): (1) failed to give clear and convincing reasons for rejecting Plaintiff's testimony; (2) failed to properly reject the lay testimony of Plaintiff's neighbor and Plaintiff's fiancé; (3) improperly determined that Plaintiff's carpal tunnel syndrome and borderline intellectual functioning were not severe impairments; (4) erroneously formulated a residual functional capacity ("RFC") that was not supported by substantial evidence; and (5) improperly crafted the hypothetical to the vocational expert ("VE"). For the reasons set forth below, the Commissioner's final decision is reversed and remanded for the immediate payment of benefits.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, an ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged

in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation proceeds to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140–41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, *available at* 1985 WL 56856).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated

in 20 C.F.R. § 404, Subpt. P, App. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's RFC, based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, *available at* 1996 WL 374184.

At the fourth step, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in

the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet his burden at the fifth step. *See id.*; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## BACKGROUND

Plaintiff was born in 1963. Tr. 167. Plaintiff dropped out of high school during ninth grade and subsequently obtained his GED after four attempts. Tr. 505-06. Prior to his claimed disability

onset date of July 2, 2009, Plaintiff had past relevant work experience as a carpenter. Tr. 18, 73.

Plaintiff has been diagnosed with carpal tunnel syndrome, chronic cervicalgia, arthritis of the neck, posttraumatic stress disorder ("PTSD"), antisocial personality disorder, alcohol dependence, and severe bipolar disorder. Tr. 375, 389, 407, 428, 434, 440, 508. Plaintiff experiences PTSD resulting from an accident in which his step-father ran over Plaintiff's three year old daughter with a lawn mower, leaving her crippled. Tr. 503, 508. This caused Plaintiff to develop significant social problems. Tr. 504. After that incident, he began to have trouble holding down a job because he could not "deal with people anymore." *Id.* He explained that he has been fired from numerous jobs because he could not get along with his co-workers. Tr. 223. Examining physician, Dr. Reynolds concluded that Plaintiff's "emotional problems interfere with reliable and predictable social functioning." Tr. 509.

Although not formally diagnosed with borderline intellectual functioning, Dr. Boyd indicated that Plaintiff's low IQ scores were "solidly" in the borderline intellectual functioning range. Tr. 226. Notably, he cannot remember his own phone number or home address and he has been unable to learn how to use email or "search for things on the internet." Tr. 285-86. Qualified Mental Health Practitioner ("QMHP") Karen Nielson noted that Plaintiff has poor insight into problems, limited attention span, and limited intellectual functioning. Tr. 409. Dr. Reynolds noted a "high probability" that Plaintiff would have difficulty functioning if he lived independently.

In 1990, Plaintiff underwent a cervical spine surgery. Tr. 422. After a failed attempt to hang himself in July 2014, he began to experience "worsening neck pain and numbness and tingling in his hand and fingers." *Id.* In 2015, he reported weakness and dropping things with his hands. Tr. 422. Dr. Cheung diagnosed carpal tunnel syndrome and recommended "surgical decompression for the right carpal tunnel." Tr. 428.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 17, 2014, the date of the application. Tr. 12.

At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, polysubstance abuse, a personality disorder, PTSD, and bipolar disorder. Tr. 12.

At the third step, the ALJ found that none of Plaintiff's impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1. Tr. 13. The ALJ therefore conducted an assessment of Plaintiff's RFC. Specifically, the ALJ found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b). Specifically, he [] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of a[n] eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks. [He] is further limited to no more than frequent climbing, and no more than occasional stooping or crouching. [Plaintiff] is limited to no more than occasional overhead reaching bilaterally, and to no more than [] frequent grasping, hand[l]ing and fingering on the right. [He] is also limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors and coworkers, and no more than brief, superficial interaction with the general public.

Tr. 14. In reaching this finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. 14-18. The ALJ also considered opinion evidence. *Id.*

At the fourth step of the five-step process, the ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 18.

At the fifth step, the ALJ found that in light of Plaintiff's age, education, work experience,

Page 7 - OPINION AND ORDER

and RFC that there were jobs existing in significant numbers in the national and local economy that he could perform. Tr. 19. Specifically, the ALJ found that Plaintiff could perform the jobs of folder, classifier, and small products assembler. Tr. 19. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 19.

## ANALYSIS

### I.  Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony. If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen*, 80 F.3d at 1281, 1283-84). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir, 1995) (internal citation omitted).

### A.  Activities of Daily Living

An ALJ may consider a claimant's activities of daily living ("ADLs") in assessing whether those activities contradict his testimony about symptoms or functional limitations, or in assessing whether those activities represent functional capacities that are transferable to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ cited Plaintiff's ability to go outside daily, ride in cars, shop in stores, "perform some yard work, care for several pets, prepare meals, play video games and spend time with his fiancé," and found that such

activities contradicted his testimony about his symptoms, and were transferable to the workplace. Tr. 15.

In order to properly discredit a claimant on the basis that his activities contradict his testimony, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Here, the ALJ never indicated which symptom testimony was contradicted by Plaintiff's activities. Therefore, the ALJ's finding was insufficient as a matter of law.

The Commissioner argues that in *Tidwell*, similar activities of daily living were inconsistent with the claimant's allegations of "total disability." Def.'s Br. at 7 (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)). Here, however, Plaintiff did not claim to be totally disabled; rather, Plaintiff testified that he can go to the store but not by himself; he can feed his dogs but he cannot take them for walks because he cannot hold onto the leash; he is unable to push a lawnmower, but over the course of a few days he can mow his lawn a little bit at a time using a riding lawn mower; he can sometimes prepare simple meals; he cannot stand for more than 15 minutes at a time; he would only be able to sit for about four hours in an eight-hour workday; and he has problems with his hands which causes him to drop things. Tr. 49, 51, 58-60. As such, none of Plaintiff's allegations are contradicted by his activities. Furthermore, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Commissioner also argues that Plaintiff's ability to work on a garage-remodeling project for a friend is inconsistent with his symptom testimony. *See* Def.'s Br. at 8; Tr. 415. Nevertheless, shortly after beginning to work on the project, he was forced to stop because he could no longer hold on to items and was dropping things. Tr. 418. Dr. Messamore believed that such symptoms were most likely due to "compression of cervical nerve roots, and could be a neurological emergency." *Id.* Notably, the fact that Plaintiff had to discontinue the work on the garage due to his inability to hold on to objects is consistent with his testimony. Moreover, the Ninth Circuit has held that a trial period of work of less than nine months is not evidence that a person is not disabled. *Lingenfelter*, 504 F.3d at 1039 ("By analogy, if working for almost nine months is not evidence that a disability benefit recipient is no longer disabled, then a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments."); *see also Kimble v. Berryhill*, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *10 (D. Or. Aug. 4, 2017). Critically, the ALJ never made this argument; therefore, the Commissioner's contention is *post hoc*, which the Court may not consider in affirming an adverse decision. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Commissioner makes an additional *post hoc* argument that a comment from Plaintiff's fiancé that Plaintiff "appeared less stressed when out in public, including at the store for groceries," was inconsistent with Plaintiff's testimony. Def.'s Br. at 8. Nevertheless, Plaintiff testified that he could go to the store, but not by himself. The fact that he was less

stressed about it at one point in time, does not contradict his testimony. Indeed, the record reflects that the local grocery store manager prefers that Plaintiff spend no more than 20 minutes in the store because Plaintiff has a history of "verbal altercations with butcher staff, homosexual customers, and deli staff." Tr. 285. Thus, the Commissioner's argument lacks merit.

Because the ALJ failed to identify how any of Plaintiff's activities contradicted any of his testimony, the Court must consider whether Plaintiff's activities meet a threshold for transferable work skills. *Orn*, 495 F.3d at 639. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, however, the ALJ did not identify how any of Plaintiff's activities transferred to gainful work; instead, the ALJ offered a vague boilerplate statement that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Tr. 15. The ALJ's rationale was not clear and convincing given the lack of specificity in his finding. *Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted). Moreover, it is unclear how activities such as going outside, riding in cars, playing computer games, or spending time with his fiancé would be transferrable to a work setting, and there is nothing to suggest that Plaintiff spends a substantial part of his day engaged in the other activities. Rather, the record reflects that Plaintiff prepares meals only once a week, he only mows the lawn once every 2-3 weeks, and he goes grocery shopping only once a week. Tr. 220-

21.  Therefore, Plaintiff's minimal activities of daily living do not constitute a clear-and-convincing reason to discount his subjective symptom testimony.

### B.  Non-compliance with Treatment

An ALJ may reject a claimant's subjective symptom testimony based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. The ALJ found that Plaintiff "often stopped taking his medications (ostensibly due to affordability and insurance issues)." Tr. 15. But, non-compliance with treatment is not a proper basis for undermining a disability claim where the claimant cannot afford such treatment. *Orn*, 495 F.3d at 638. There is ample evidence in the record supporting Plaintiff's contention that he could not afford treatment. Tr. 354 (Plaintiff reported that he stopped "his most current medications because of insurance issues."); Tr. 383 (Plaintiff declined treatment for financial reasons); Tr. 386 ("[B]ecause his insurance does not have good coverage, he is unable to afford his medication and has been off [for four months]."); Tr. 409 (Plaintiff was experiencing "financial difficulties."). Accordingly, Plaintiff's non-compliance with treatment was not a clear-and-convincing reason for discounting his subjective symptom testimony.

### C.  Objective Medical Evidence

The Commissioner argues that the objective medical evidence contradicted Plaintiff's subjective symptom testimony. Specifically, the Commissioner asserts that mild findings upon imaging of Plaintiff's spine contradict his subjective symptom testimony about his back and neck pain. However, it is error to rely on "the mildness" of spinal imaging in assessing functional limitation due to pain. *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017).

Furthermore, the ALJ did not rely on such a rationale in rejecting Plaintiff's testimony. As such, the Commissioner's argument amounts to a *post hoc* rationalization, which the Court must reject. *Bray*, 554 F.3d at 1225. Therefore, the ALJ improperly rejected Plaintiff's symptom testimony.

## II. Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of Plaintiff's neighbor as well as his fiancé. Although the ALJ summarized the lay witness testimony, he did not include in his decision any reasons for rejecting it. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918-19. The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). As such, the ALJ erred in rejecting the lay witness testimony.

The Commissioner argues that the ALJ validly rejected the lay witness testimony because it was similar to Plaintiff's testimony. Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony may be harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Here, however, because the ALJ did not provide clear-and-convincing reasons to reject Plaintiff's symptom testimony, the ALJ erred in rejecting the lay witness testimony.

The Commissioner additionally argues that the error was harmless because the ALJ reasonably accounted for the limitations alleged by the lay witnesses. But, the Commissioner's

assertion is not supported by the record. For example, Plaintiff's fiancé testified that Plaintiff has significant problems with memory such that he cannot even remember his own phone number or home address. Tr. 285. She also indicated that Plaintiff has substantial difficulty with learning new tasks, given that she has been unable to teach him "how to search for things on the internet." Tr. 286. Despite the Commissioner's assertion, the RFC does not reflect Plaintiff's established difficulties with memory and learning. Plaintiff's fiancé additionally explained that Plaintiff regularly gets into verbal altercations when he interacts with people or he is in a public place. Tr. 285. Although the ALJ purported to take into account Plaintiff's inability to get along with others, the RFC does not account for the extent of Plaintiff's antisocial behavior reflected in the record. The RFC limited Plaintiff to occasional contact with supervisors and co-workers; however, this would still allow for almost three hours of interaction per workday. The testimony of Plaintiff's fiancé reflects that Plaintiff cannot spend much more than 20 minutes in a store without instigating verbal altercations with customers or staff. Accordingly, the limitations alleged by Plaintiff's fiancé have not been reasonably accounted for in the RFC.

Plaintiff's neighbor testified that Plaintiff could stand for only short periods of time, and that he could use his hands for only short periods of time. Tr. 201. Nevertheless, the RFC indicated Plaintiff could stand for up to six hours per eight-hour work day, he could frequently use his right hand, and provided no limitation for the use of his left hand. Tr. 14. Therefore, the limitations alleged by Plaintiff's neighbor were not reasonably accounted for in the RFC. As such, the ALJ's error in rejecting the lay testimony has not harmless.

### III.    Severe Impairments

Plaintiff argues that the ALJ erred by failing to find that his carpal tunnel syndrome and borderline intellectual functioning were severe impairments. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c); *id.* § 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

### A.    Carpal Tunnel Syndrome

The ALJ determined that Plaintiff's carpal tunnel syndrome was not severe, for the sole reason that "[n]o aggressive treatment was recommended or anticipated for this condition." Tr. 13. The ALJ's finding was a mischaracterization of the record: Dr. Cheung explicitly recommended surgery to treat Plaintiff's carpal tunnel syndrome. Tr. 428. Thus, the ALJ's conclusion was not supported by substantial evidence.

The Commissioner argues that any error in the ALJ's step two analysis was harmless because step two was resolved in Plaintiff's favor. *See, e.g., Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In formulating the RFC, the ALJ must consider all of a claimant's impairments, both severe and non-severe; accordingly, the RFC "*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*; *see also* SSR 98-8p, 1996 WL 374184, at *5. Although, the ALJ was required to consider Plaintiff's carpal tunnel syndrome—whether he found it to be severe or not—there is no evidence that the ALJ did so in crafting Plaintiff's RFC. Indeed, after concluding that it was not severe at step two, the

ALJ's decision made no further mention of Plaintiff's carpal tunnel syndrome.

The Commissioner argues that the RFC limitations regarding handling, grasping, and fingering accounted for Plaintiff's carpal tunnel syndrome symptoms. In contrast, Plaintiff argues that the RFC limitations regarding handling, grasping, and fingering were based on Plaintiff's cervical spine condition. Plaintiff alleges that because his cervical spine condition was deemed a severe impairment at step two and because his spinal injury was causing problems with his hands, it follows that the ALJ must have based the handling, grasping, and fingering limitations on Plaintiff's cervical spine condition. The Court concurs. The record reflects that Plaintiff's cervical spine condition resulted in problems with handling and grasping, as Dr. Messamore believed that Plaintiff's inability to grasp objects was most likely due to "compression of cervical nerve roots." Tr. 418. "When a claimant suffers from multiple impairments, the [ALJ] must consider their combined effect" in formulating the RFC. *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). Considering that the ALJ did not mention Plaintiff's carpal tunnel syndrome at any point after step two, the ALJ did not take Plaintiff's carpal tunnel syndrome into account in assessing the handling, grasping, and fingering limitations. Accordingly, the ALJ's complete failure to consider Plaintiff's carpal tunnel syndrome in formulating the RFC was harmful because he failed to consider the "combined effect" of Plaintiff's impairments. *See Macri*, 93 F.3d at 545; *see also Buck*, 869 F.3d at 1049.

### B. Borderline Intellectual Functioning

The ALJ did not address Plaintiff's borderline intellectual functioning in the step two analysis. In support, the Commissioner argues that Plaintiff's borderline intellectual functioning was not a medically determinable impairment. To establish the existence of a medically

determinable impairment, the claimant must provide medical evidence consisting of "signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms, a diagnosis, or a medical opinion alone is not enough to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1521; SSR 96-4p.

A review of the record reveals that there were diagnostic tests demonstrating Plaintiff's borderline intellectual functioning. Plaintiff scored a 73 on a Full Scale IQ test, putting him in the fourth percentile. Tr. 513. Moreover, Plaintiff scored a 76 on the Verbal Comprehension Index and a 71 on the Working Memory Index, placing him in the fifth and third percentiles, respectively. *Id.* Such results indicated intellectual functioning in the borderline range. Tr. 226, 513. Notably, if Plaintiff's Full Scale IQ score had been just three points lower, he would have met a listing for borderline intellectual functioning. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05) (To show that a claimant meets Listing 12.05(C), he must demonstrate "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation.").[2]

---

[2] To meet the first prong, "[a] claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, *such as* attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low-skilled work history." *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1011-12 (D. Or. 2011) (emphasis added) (quotations omitted); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Given that Plaintiff was in special education classes, had difficulties with reading, writing, and math, was held back at least twice, and dropped out of high school in the ninth grade, he would meet the first prong. Tr. 52, 407, 513. Plaintiff meets the third prong because he had additional severe impairments. *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (A finding at step two by the ALJ that a claimant suffers from an additional "severe" impairment is sufficient to satisfy the third requirement of Listing

Considering that Plaintiff nearly meets a listing for borderline intellectual functioning, such impairment is decidedly beyond a "slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28). Accordingly, the ALJ erred in failing to conclude that Plaintiff's borderline intellectual functioning was a medically determinable severe impairment.

## IV. Improper Formulation of the RFC

Plaintiff argues that the RFC does not properly capture Plaintiff's moderate limitations in maintaining concentration, persistence, and pace, or his limitations in social functioning, as assessed by Dr. Reynolds.

### A. Concentration, Persistence, and Pace

An RFC limitation to simple tasks may adequately capture moderate limitations in concentration, persistence, and pace, so long as "the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, it does not appear that the ALJ's assessment is consistent with Dr. Reynolds' opinion. Although Dr. Reynolds opined that Plaintiff was "able to comprehend and remember simple job instructions," and that Plaintiff did not have problems with concentration *during the exam*, the doctor also noted that Plaintiff's "periods of decompensation may interfere with his ability to sustain and persist," and that his "medications may interfere with sustaining concentration and persisting." Tr. 509. Despite Plaintiff's ability to maintain concentration during the short mental status exam, Dr. Reynolds concluded that Plaintiff may struggle sustaining such concentration for longer periods. Dr. Reynolds specifically observed that

12.05(C)). Thus, had Plaintiff scored a 70 on his IQ test, he would have met Listing 12.05(C).

Plaintiff "seems to be quite dependent on his fiancé and would not function so well if on his own." Tr. 509. Notably, Plaintiff's fiancé accompanied Plaintiff during the mental status exam whereas in a work setting she would not be there to help Plaintiff maintain focus.

Dr. Reynolds' determination that Plaintiff may not be able to sustain concentration has strong support in the record. Plaintiff testified that he hardly ever finishes anything that he starts, and when he does finish things it requires many reminders from his fiancé. Tr. 223. He reported that he could only maintain attention for ten minutes at a time. Tr. 223. Plaintiff's neighbor testified that Plaintiff never finishes things that he starts. Tr. 201. QMHP Karen Nielson noted that Plaintiff has a limited attention span. Tr. 409.

Moreover, Plaintiff's physical limitations further indicate that he would have difficulty keeping pace in a work setting. Notably, he has problems holding on to objects and frequently drops things. Tr. 46, 56, 379, 422, 504. It is difficult to imagine how Plaintiff could keep pace in occupations such as folder, classifier,[3] and small parts assembler, considering that the ALJ limited Plaintiff to using his dominant hand for no more than two-thirds of the day. Tr. 14, 51. The Dictionary of Occupational Titles reflects that all three occupations would likely require the use of both hands for much, if not all, of the day in order to maintain productivity. *See* DICTIONARY OF OCCUPATIONAL TITLES, (4th ed. 1991), 369.687-018, 361.687-014, 706.684-022. Accordingly, the Court is persuaded that this case is analogous to *Brink*, where the Ninth Circuit held that "[t]he Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive. Indeed,

---

[3] A classifier "[s]orts laundry into lots, such as flatwork, starchwork, and colored articles prior to washing or ironing: Places sorted articles in bins, nets, or baskets, or onto conveyor belt. May weigh flatwork and record weight on laundry ticket." DICTIONARY OF OCCUPATIONAL TITLES, (4th ed. 1991), 361.687-014.

repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed." *Brink v. Commissioner Social Sec. Admin.*, 343 Fed. Appx. 211, 212 (9th Cir. 2009). This is particularly true of the small parts assembler job which is described as "assembly line" work. DICTIONARY OF OCCUPATIONAL TITLES, (4th ed. 1991) 706.684-022. Although *Brink* is an unpublished decision by the Ninth Circuit and therefore is not binding, it may be indicative of how the court would rule in a published opinion. *See Ruth v. Berryhill*, No. 1:16-cv-0872-PK, 2017 WL 4855400, at *11 n.12 (D. Or. Oct. 26, 2017). Accordingly, the ALJ's limitation to simple, repetitive work was not sufficient to account for Plaintiff's difficulties with concentration, persistence, and pace.

## B. Social Functioning

An RFC that limits a claimant to occasional interaction with the public is sufficient to account for moderate social limitations. *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017). Here, however, Plaintiff's social limitations were not merely moderate. Dr. Reynolds' opinion, which was given "great weight" by the ALJ, stated that Plaintiff's "emotional problems interfere with reliable and predictable social functioning." Tr. 509. Dr. Reynolds also noted that Plaintiff "easily becomes frustrated and angry," and he would have difficulty functioning socially without his fiancé present. Tr. 504, 509. In addition to Dr. Reynolds' findings, Plaintiff's remarkable difficulties with social functioning are well-documented in the record. A psychiatric evaluation revealed that Plaintiff had a "serious impairment" with social functioning. Tr. 413. Plaintiff was diagnosed with antisocial personality disorder. Tr. 407. Plaintiff indicated that he only spends time with his fiancé and that he has problems getting along with family, friends, and neighbors. Tr. 222-23. He also reported that he has been fired from

numerous jobs because he did not get along with co-workers. Tr. 223.

Moreover, Plaintiff's fiancé recounted that at a social gathering, "a friend's boyfriend commented that his daughter was doing well in her first year of college. [Plaintiff] got in the man's face (mere inches) and yelled at him because he took the comment to mean that the guy was telling him that he was stupid because he didn't go to college." Tr. 285. She also testified that the local grocery store manager does not want Plaintiff to be in the store for more than 20 minutes because Plaintiff gets into verbal altercations with other customers and store staff. Tr. 285. Accordingly, limiting Plaintiff to occasional contact with co-workers and supervisors is not sufficient considering Plaintiff struggles to avoid verbal altercations on routine public outings and that he has a long history of being fired from jobs due to confrontations with co-workers. These facts also suggest that Plaintiff's RFC should limit Plaintiff from any contact with the general public. Thus, the ALJ's limitations were not sufficient.

Furthermore, as discussed previously, the RFC was also deficient in its failure to account for Plaintiff's notable difficulties with memory and learning, his inability to stand for more than short periods of time, his inability to use his hands for more than short periods of time, and his borderline intellectual functioning. Accordingly, the ALJ's RFC formulation was erroneous.

## V.       Invalid Hypothetical to the VE

Plaintiff argues that the ALJ failed to present a hypothetical to the VE that fully reflected his limitations. As noted above, the ALJ erred in failing to fully account for a number of limitations in the RFC. The ALJ was required to include all of the limitations in the hypothetical questions to the VE. *Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and

restrictions of the particular claimant.") (internal quotations omitted). Because, the ALJ failed to include all of the limitations in the hypothetical questions to the VE, the VE's testimony had no evidentiary value and it was error for the ALJ to rely on it. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value.") (quoting *Gallant*, 753 F.2d at 1456).

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The first requisite is met because the ALJ improperly rejected Plaintiff's testimony; improperly rejected the lay witness testimony of Plaintiff's neighbor and Plaintiff's fiancé; erroneously determined that Plaintiff's carpal tunnel syndrome and borderline intellectual functioning were not severe impairments; improperly formulated the RFC; and erroneously presented the VE with an invalid hypothetical.

To determine whether the second requisite is met, the Court assesses whether there are "significant factual conflicts" in the record. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1104 (9th Cir. 2014). The Commissioner contends that such conflicts exist between Plaintiff's subjective testimony, the objective medical evidence, the medical opinion evidence, and Plaintiff's daily activities; however, the Commissioner fails to identify any specific conflicts. Moreover, as discussed above, Plaintiff's subjective testimony was consistent with his daily activities and the objective medical evidence. Further, although the Commissioner cites the opinions of the non-examining physicians as conflicting with Plaintiff's testimony, the ALJ rejected both of these opinions, and neither party challenged that finding. Accordingly, the opinions of the non-examining physicians do not present a significant conflict. *See Fulsaas v. Berryhill*, No. 3:17-cv-00296-PK, 2018 WL 2091357, at *11 (D. Or. Mar. 22, 2018).

The Commissioner also cites the opinions of Dr. Reynolds and Dr. Albert as contradicting Plaintiff's testimony. To the contrary, both opinions were consistent with Plaintiff's testimony;

Dr. Reynolds found that Plaintiff's periods of decompensation could interfere with his ability to sustain concentration and his "emotional problems interfere with reliable and predicable social functioning." Tr. 509. Similarly, Dr. Albert anticipated Plaintiff having "difficulty relating to others in a typical work setting," and "tolerating the stress and pressure associated with a typical work day." Tr. 514. Additionally, Dr. Albert noted that Plaintiff "may need assistance with personal, social, and occupational competence." *Id.* The opinions of Dr. Reynolds and Dr. Albert do not, therefore, contradict Plaintiff's symptom testimony. As such, the Court finds no significant factual conflict in the record. *Treichler*, 775 F.3d at 1104.

When crediting Plaintiff's testimony as well as the lay witness testimony as true, the ALJ would be required to find Plaintiff disabled on remand because their testimony demonstrates that he would not be able to interact appropriately with co-workers on a sustained basis. Tr. 223, 285. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet *any of these* basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." SSR 85-15 (emphasis added); *see also Palleschi v. Colvin*, 2016 WL 7261400, at *5 (C.D. Cal. Dec. 15, 2016) ("Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers' as separate aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' *any* basic mental demand could 'severely limit the potential occupational base.'") (citing

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)).

The record is replete with evidence that Plaintiff would not be able to get along with co-workers. Plaintiff was diagnosed with antisocial personality disorder. Tr. 407. Dr. Albert found that Plaintiff may have difficulty relating to others in a typical work setting. Tr. 514. Mental status exams revealed poor impulse control. Tr. 387, 394, 406. Plaintiff has a short temper, and Dr. Reynolds concluded that Plaintiff's "emotional problems interfere with reliable and predictable social functioning." Tr. 504, 509. A psychiatric evaluation indicated that Plaintiff has a "serious impairment in social [and] occupational" functioning. Tr. 413. Although Plaintiff leads a solitary life, he often instigates verbal altercations when he interacts with other people. Tr. 285. Moreover, Plaintiff has been fired from numerous jobs because he could not get along with co-workers. Tr. 223. Accordingly, Plaintiff's inability to interact appropriately with co-workers "justif[ies] a finding of disability." SSR 85-15.

Where each of the credit as true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled." *Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1021). This case is not one of those "rare instances" and the Court has no serious doubt that Plaintiff is disabled.

The Commissioner argues that because the ALJ found Plaintiff's polysubstance abuse to be a severe impairment, a remand for proceedings is necessary to resolve the materiality of Plaintiff's substance abuse. The Commissioner, citing *Gonzales v. Thomas*, contends that the Court is not empowered to conduct a *de novo* review of the materiality of Plaintiff's substance abuse. Def.'s Br. at 17 (citing *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006)). Nevertheless, *Gonzales* is an immigration case which stands for the proposition that courts of appeal are

*generally* not "empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusion based on such inquiry." *Gonzales*, 547 U.S. at 186 (internal quotations omitted). In the context of the Social Security Act, however, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the district court. *Harman*, 211 F.3d at 1178. Thus, *Gonzales* is inapposite.

The issue of whether to remand for further proceedings or the immediate payment of benefits turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Strauss*, 635 F.3d at 1138. Such is the case here. Plaintiff's anti-social personality disorder is, in-and-of-itself, sufficient to establish disability because it makes him unable to interact appropriately with co-workers. There is nothing in the record to indicate that Plaintiff's substance use disorders are related to his anti-social personality disorder. Although the record establishes a strong nexus between Plaintiff's suicidal ideation and his substance abuse; there is no such nexus between his anti-social personality disorder and substance abuse. *See* Tr. 319, 329, 353, 358-59, 393-94, 405, 411, 413, 481. In fact, the record indicates that Plaintiff's anti-social personality disorder is rooted in his PTSD resulting from an accident in which his step-father ran over Plaintiff's three-year-old daughter with a lawn mower, leaving her crippled. Tr. 354, 503, 508. After that incident, Plaintiff developed anti-social tendencies and became incapable of interacting appropriately with people. Tr. 504. Furthermore, although the record reflects that Plaintiff frequently initiated verbal confrontations, there is no evidence that any of these confrontations occurred while Plaintiff was under the influence of drugs or alcohol.

The Commissioner asserts that one of Plaintiff's treating providers found that Plaintiff's

psychological issues primarily revolved around alcohol abuse. The Commissioner mischaracterizes the record. The treating provider indicated that the primary causes of Plaintiff's self-harm were likely related to substance abuse. Tr. 319. The treating provider's observation is further evidence of the nexus between Plaintiff's suicidal ideation and substance abuse, but, as with the rest of the record, there is no suggestion that Plaintiff's anti-social personality disorder is related to substance abuse.

Moreover, the Court notes that remanding this case back to the agency merely because the ALJ did not perform the drug and alcohol abuse analysis, would "create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 595. Accordingly, further proceedings would serve no useful purpose and a remand for benefits is proper. *Strauss*, 635 F.3d at 1138.

## CONCLUSION

The ALJ's decision finding Plaintiff is not disabled is not supported by substantial evidence in the record and is therefore REVERSED and REMANDED for the immediate payment of benefits.


Dated this 23rd day of July, 2018.

Honorable Paul Papak
United States Magistrate Judge